WO                                                                      MGD

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Oscar Contreras Aguilar,                        No. CV-23-00582-TUC-SHR

                    Plaintiff,

v.                                               **ORDER**

M. Gutierrez, et al.,

                    Defendants.

Plaintiff Oscar Contreras Aguilar, who is currently confined in the United States Penitentiary-Coleman, in Coleman, Florida, filed this pro se civil rights action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Federal Tort Claims Act (FTCA).[1]  Before the Court is Plaintiff's Emergency Motion for Preliminary Injunction (Doc. 17) and Motion for Re-Service of Documents (Doc. 34).  The Court will deny the Motion for Preliminary Injunction and grant the Motion for Re-Service of Documents.

**I.    Background**

In her Second Amended Complaint, Plaintiff alleges she was injured by officers during a cell extraction at USP-Tucson on October 31, 2023, she was physically and sexually assaulted by officers on November 3, 2023, and her requests for medical care in

---

[1] Plaintiff was incarcerated at USP-Tucson in Tucson, Arizona, at the time she filed her original Complaint.  Plaintiff refers to herself with feminine pronouns, and the Court will do the same.

the following weeks were ignored or delayed for months. (Doc. 16.) Plaintiff alleges she suffered a "fractured/crooked nose," severe bleeding, bruises/contusions all over her face, head, neck, upper torso, and back, severe burns, numbness, swelling, extreme discomfort, intense pain, permanent nerve damage, severe emotional and psychological distress, permanent "scars/marks," a sprained neck, and persistent spinal/back pain.

On screening under 28 U.S.C. § 1915A(a), the Court determined Plaintiff had stated an FTCA claim in Count One against Defendant United States, an Eighth Amendment excessive force claim in Count Two against Defendants Federal Bureau of Prisons (BOP) Director Colette Peters and USP-Allenwood Warden D. Christensen in their official capacities, and an Eighth Amendment medical care claim in Count Three against Defendants Peters and Christensen in their official capacities. (Doc. 20.) The Court directed Defendants to answer the claims against them. (*Id.*) The Court also required Defendants Peters and Christensen to respond to Plaintiff's Emergency Motion for Preliminary Injunction. (*Id.*)

## II.    Motion for Preliminary Injunction

In her Motion, Plaintiff seeks an order to be taken "to an outside hospital for MRIs, medical assessments, and any other medical evaluation/procedure necessary to assess her injuries" from the incidents described in the Second Amended Complaint and "for any necessary treatment/surgery and follow up care." (Doc. 17 at 3.) Plaintiff asserts she continues to suffer severe neck, spinal, and back pain, and the pain significantly interferes with her daily activities and sleep. (*Id*. at 1–2.) Plaintiff asserts, because she is being held in the Special Housing Unit, it is difficult to access the law library and she is unable to file a memorandum of law in support of her Motion. (*Id*. at 3.)

Defendants present evidence Plaintiff was seen at health services at USP-Tucson for complaints of a broken nose, concussion, and dislocated finger on November 22, 2023. (Doc. 23 at 2, citing Att. 2, medical record excerpts from October 31, 2023, to December 2, 2024.) Defendants assert Plaintiff's medical records do not show any complaints regarding her back or neck at that visit. (*Id*.) X-rays taken of Plaintiff's nasal bones on

1  December 8, 2023, showed "[n]o acute nasal bone fracture or osseous deformity [structural
2  distortion of a bone from its normal shape, size, or alignment]."  (*Id.*, citing Att. 2 at 85.)
3  X-rays of Plaintiff's hands that same day showed "[n]ormal bone mineralization. No acute
4  fracture, dislocation or malalignment."  (*Id.*)

5      On October 21, 2024, x-rays were taken of Plaintiff's cervical and lumbar spine.
6  The cervical spine impression was "[n]ormal radiographic examination of the cervical
7  spine" with the following findings:

8      Normal bone mineralization. Normal alignment of cranial-
9      cervical junction. Normal cervical spine alignment. No acute
       fracture or listhesis.
10
       The cervical intervertebral disc spaces are normal in height.
11
       The cervical facets appear unremarkable.
12
       No prevertebral soft tissue swelling.
13
14  (*Id.*, citing Att. 2 at 75.)

15      The lumbar spine impression was also a "[n]ormal radiographic examination of the
16  lumbar spine" with the following findings:

17      Normal bone mineralization. Normal alignment. No acute
       fracture or listhesis.
18
       The lumbar intervertebral discs are normal in height.
19
       The lumbar facets appear unremarkable.
20
21  (*Id.* at 75–76.)

22      Defendants assert the x-ray results were conveyed to Plaintiff.[2]  (Doc. 23 at 2.)

23  **III.    Legal Standards**

24  _____

25      [2] Plaintiff asserts in her Motion for Re-Service of Documents (Doc. 34) that she has
    not received any filings in this case dated after November 15, 2024, including the Court's
26  November 20, 2024 Order (Doc. 20) directing Defendants Peters and Christensen to
    respond to Plaintiff's Motion for Preliminary Injunction and Defendants' Response (Doc.
27  23).  Notwithstanding Local Rule of Civil Procedure 7.2(d), the Court concludes a reply to
    Defendants' Response is unnecessary and would not significantly aid in the analysis of
28  Plaintiff's Motion for Preliminary Injunction.  Accordingly, the Court will not afford
    Plaintiff an opportunity to file a reply, but, as discussed below, will grant Plaintiff's Motion
    for Re-Service.

**A.    Injunctive Relief Standard**

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right.").  Nonetheless, federal courts "must not shrink from their obligation to enforce the constitutional rights of all persons, including prisoners" and must not "allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Porretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021) (quoting *Brown v. Plata*, 563 U.S. 493, 511 (2011)).

A plaintiff seeking injunctive relief under Rule 65 of the Federal Rules of Civil Procedure must show: (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20.  When the government opposes a preliminary injunction, "[t]he third and fourth factors of the preliminary-injunction test—balance of equities and public interest—merge into one inquiry." *Porretti*, 11 F.4th at 1050.  The "balance of equities" concerns the burdens or hardships to a prisoner complainant compared with the burden on the government defendants if an injunction is ordered. *Id.*  The public interest primarily concerns the injunction's impact on nonparties rather than parties. *Id.* (citation omitted).  Regardless, it is "always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (citation omitted).

Where a plaintiff seeks a mandatory injunction, rather than a prohibitory injunction, injunctive relief is "subject to a higher standard" and is "permissible when 'extreme or very serious damage will result' that is not 'capable of compensation in damages,' and the merits of the case are not 'doubtful.'" *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879

(9th Cir. 2009)).  Further, under the Prison Litigation Reform Act, injunctive relief must be narrowly drawn and be the least intrusive means necessary to correct the harm.  18 U.S.C. § 3626(a)(2); *see Gilmore v. California*, 220 F.3d 987, 998–99 (9th Cir. 2000).

### B.    Eighth Amendment

To succeed on an Eighth Amendment medical care claim, a plaintiff must show (1) a "serious medical need" by demonstrating failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain, and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard."  *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096.  Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety.  *Farmer*, 511 U.S. at 835.  "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. Cal. Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983).  "A difference of opinion does not amount to a deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  A mere delay in medical care, without more, is insufficient to

state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. *Broughton*, 622 F.2d at 460. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104.

**IV.  Discussion**

Defendants assert Plaintiff has received x-rays from an outside provider for her alleged neck and back injuries as well as for her alleged nose and finger injuries, and all x-rays were normal. (Doc. 23 at 7.) Thus, Defendants argue, no further treatment is required, and Plaintiff's desire for treatment for nonexistent injuries is, at best, a difference of medical opinion, which is insufficient to establish a deliberate indifference claim. (*Id.*)

As to the first *Winter* factor, the Court finds Plaintiff has failed to show a likelihood of success on the merits. There is no dispute Plaintiff received x-rays for her alleged injuries on December 8, 2023 (showing no fractures or deformities of her nose and hands) and October 21, 2024 (showing normal lumbar and cervical spine). By not replying to the evidence showing these normal findings, Plaintiff has failed to show she continues to suffer from a serious medical need warranting injunctive relief. Because Plaintiff has not satisfied the objective prong of showing a current serious medical need, she cannot satisfy the subjective prong of showing a purposeful act or failure to respond to her pain or possible medical need and harm caused by the indifference. *See Farmer*, 511 U.S. at 845 (where a plaintiff seeks injunctive relief, the deliberate indifference determination is based on the defendant's current conduct).

To the extent Plaintiff disagrees with the course of treatment she has received, this disagreement is insufficient to establish a constitutional violation. *See Sanchez*, 891 F.2d at 242; *Toguchi*, 391 F.3d at 1058. Plaintiff is not qualified to make medical diagnoses or treatment decisions, and she has not offered any evidence the care she has received has been medically unacceptable.

Likewise, Plaintiff has failed to establish she will suffer irreparable harm absent different or additional treatment. Plaintiff has received x-rays for her injuries, and they all

showed normal results.  Because there is no evidence of ongoing injury, there is no evidence before the Court Plaintiff needs further treatment such that she will suffer irreparable harm without such treatment.

Because Plaintiff fails to produce evidence showing a likelihood of success on the merits or that she faces a likelihood of irreparable harm, the Court will deny Plaintiff's Motion for Preliminary Injunction and will not address any of the other *Winter* factors.  *See Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011) (because the plaintiffs failed to show they are likely to suffer irreparable harm in the absence of preliminary relief, the court need not address the remaining elements of the preliminary injunction standard).

**V.    Motion for Re-Service of Documents**

In her Motion for Re-Service of Documents (Doc. 34), Plaintiff asks the Court to order re-service of all filings in this case since November 15, 2024.  Plaintiff asserts she has not received these filings due to several recent transfers between prisons.  The Court will grant Plaintiff's Motion.

**VI.    Conclusion**

**IT IS ORDERED** Plaintiff's Emergency Motion for Preliminary Injunction (Doc. 17) is **DENIED**.

**IT IS FURTHER ORDERED** Plaintiff's Motion for Re-Service of Documents (Doc. 34) is **GRANTED**.

**IT IS FURTHER ORDERED** the Clerk of Court shall provide Plaintiff with a copy of the docket, as well as copies of Docs. 20, 23, 24, 26, 27, 35, 36, 38, 39.

Dated this 27th day of February, 2025.

Honorable Scott H. Rash
United States District Judge